# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**OCALA AUTOMOTIVE**
**MANAGEMENT, LLC, MORGAN**
**AUTO GROUP and V.B.**
**INVESTMENTS OF OCALA, LLC,**
d/b/a Honda of Ocala

    **Plaintiffs,**

v.                                                                              Case No: 5:13-cv-375-Oc-22PRL

**SCOTT WHITCOMB**

    **Defendant.**

## REPORT AND RECOMMENDATION[1]

On August 7, 2013, Plaintiffs/Petitioners, Ocala Automotive Management LLC, Morgan Auto Group, and V.B. Investments of Ocala, LLC., initiated this action by filing a petition pursuant to the Federal Arbitration Act, 9 U.S.C. § 2, requesting the Court to enter an Order compelling Defendant/Respondent Scott Whitcomb to proceed to arbitration under an employee contract dated December 1, 2010. (Doc. 1). Though this request seems straightforward, it is not: Mr. Whitcomb has attempted to proceed to arbitration, so, on its face, a request compelling him to do so seems misplaced.

---

[1]     Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

This petition was referred to me for the issuance of a Report and Recommendation (see Doc. 15), and, for the reasons explained below, I respectfully **RECOMMEND** that Plaintiffs' petition be **DENIED**.

I.   BACKGROUND

Defendant Scott Whitcomb was hired by Plaintiffs in 2008 as the Director of Finance at Honda of Ocala. (Doc. 19-1). In April 2011, he was diagnosed with leukemia and hospitalized. (Doc. 19-1). Following an absence of several months, Defendant returned to work. (Doc. 19-1). Defendant alleges that, upon his return, his pay was reduced and his employment was terminated after two to three months. (Doc. 19-1). Defendant contends he was the subject of unlawful retaliation and discrimination on the basis of age and a disability, and filed a Charge of Discrimination with the Florida Commission on Human Relations. (Doc. 19-1).

The parties are in agreement that Defendant's claims of employment discrimination are subject to arbitration. Indeed, during Defendant's employment with Plaintiffs, he executed <u>two</u> arbitration agreements. First, in 2009, Defendant and Honda of Ocala entered into an arbitration agreement that, pursuant to its terms, required Honda of Ocala to advance all arbitration fees and costs. (Doc. 19-1, p. 8). Indeed, in the event of arbitration, the agreement expressly provides that the "[e]mployer will advance all arbitration fees and costs on behalf of the Employee." *Id.* Then, in 2010, Defendant and Honda of Ocala entered into a second arbitration agreement that, by its terms, "supersedes any and all prior agreements regarding these issues," and (importantly for purposes of the current dispute) does not include the provision for the employer to advance the arbitration fees and costs. (Doc. 19-1, p. 6-7). The 2010 agreement was contained in the Morgan Auto Group Teammate Handbook, and executed by Defendant via an electronic signature. (Doc. 19-1, p. 6-7).

On May 22, 2013, <u>Defendant</u>, Mr. Whitcomb, submitted his claim to the National Arbitration Forum ostensibly under the 2009 agreement, since he represented that "[a]rbitration fees and costs are to be advanced by Respondent." (Doc. 19-1, p. 2-3). It is apparent, though, that when he submitted his claim to arbitration he submitted both agreements. Indeed, upon review, the National Arbitration Forum noted that two arbitration agreements had been submitted with <u>Defendant's</u> claim, both the 2009 and 2010 agreements. (Doc. 19-2, p. 4). The Forum informed the parties that it would administer the 2009 agreement (apparently the agreement the Defendant, Mr. Whitcomb, hoped to proceed under), while noting that it was unable to administer provisions of the 2010 agreement (the agreement Plaintiffs hoped to proceed under and now seek to have this Court, somehow, compel Mr. Whitcomb to proceed under). Specifically, in a letter to the parties, the Forum stated:

> The National Arbitration Forum has reviewed both agreements and has determined that we would be unable to administer some of the provisions outlined in the Arbitration Agreement dated December 2, 2010. The Forum would be able to administer the Arbitration under the agreement dated November 4, 2009 and under the applicable rules contained in the Code of Procedure.

(Doc. 19-2, p. 4). The Forum therefore asked the parties to notify the Forum if they would agree to proceed under the 2009 agreement, and, if so, requested Plaintiffs pay the applicable fees. (Doc. 19-2, p. 4). Plaintiffs did not agree, and commenced this action claiming that Defendant "continues to refuse to arbitrate his claim in accordance with the terms of the 2010 agreement." (Doc. 19, p. 3). Although Defendant was apparently represented by counsel for the purposes of his claim before the National Arbitration Forum, he is proceeding *pro se* in this action.

On November 19, 2013, the undersigned held a hearing regarding Plaintiffs' Motion to Compel Respondent to Abide by Related Case Order (Doc. 11), and heard argument on the

issues in this case. (Doc. 16). The parties were directed to submit briefs providing a status report and briefing the Court on its jurisdiction and whether an action for a declaratory judgment would be appropriate. (Doc. 17). Plaintiffs have submitted a brief in support of their petition for an order compelling arbitration. (Doc. 19). Defendant failed to file a brief in response. Nonetheless, the issues raised in Plaintiffs' petition to compel arbitration (Doc. 1) are ripe for decision.

## II. DISCUSSION

1. Jurisdiction is a threshold issue in any case pending in United States district court. Indeed, federal courts are courts of limited jurisdiction, which are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of So. Ala. v. American Tobacco Co.,* 168 F.3d 405, 409 (11th Cir.1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994)). Subject-matter jurisdiction, therefore, is a threshold inquiry that a court is required to consider before addressing the merits of any claim, and may do so *sua sponte*. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir.2001) (raising federal jurisdiction issue *sua sponte*); *cf. Fitzgerald v. Seaboard Sys. R.R., Inc.,* 760 F.2d 1249, 1251 (11th Cir.1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Here, Plaintiffs contend that this Court has subject matter jurisdiction pursuant to Section 2 of the Federal Arbitration Act, which provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable."  In this regard, Plaintiffs contend this Court has jurisdiction because this action arises out of arbitration proceedings pursuant to the 2010 agreement.

Plaintiffs also contend that under § 4 of the Federal Arbitration Act, "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which . . . would have jurisdiction under title 28, in a civil action . . . of the subject jurisdiction of a suit arising out of a controversy between the parties."  Plaintiffs seem to contend that this Court would have jurisdiction over this Petition because it would otherwise have jurisdiction over a (potential) suit by Plaintiff under federal employment law – Title VII or the Americans with Disabilities Act.

To begin with, to the extent Plaintiffs rely on the FAA itself as a direct grant of jurisdiction over all disputes related to arbitration agreements, such reliance is wrong.  Congress enacted the FAA "[t]o overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), and to declare "'a national policy favoring arbitration' of claims that parties contract to settle in that manner," *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008).  The Act itself, however, has been referred to as "'something of an anomaly,'" as it "'<u>bestow[s] no federal jurisdiction</u> but rather require[es] [for access to a federal forum] an independent jurisdictional basis" over the parties' dispute." *Vaden v. Discover Bank*, 129 S.Ct. 1262, 1272 (2009) (quoting *Hall Street Associates, L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 582 (2008)) (emphasis added).

Instead, under § 4 of the Act, a district court should assume the absence of the agreement and determine whether it "would have jurisdiction under title 28" over "the controversy between

the parties," which is most straightforwardly read to mean the "underlying dispute" between the parties. *See Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 25, n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). To this end, Plaintiffs contend that this Court would have jurisdiction over the underlying controversy between the parties, namely Defendant's claims pursuant to Title VII and the Americans with Disabilities Act. Indeed, this Court would have original jurisdiction over Defendant's potential claims pursuant to 28 U.S.C. § 1331. But is that really the underlying dispute here? I submit it is not.

The Supreme Court has stated, with respect to determining the nature of the underlying suit, that "[a] federal court may 'look through' a § 4 petition to determine whether it is predicated on an action that 'arises under' federal law." *Valden*, 129 S.Ct. at 1273. In doing so, the court is bound by the well-pleaded complaint, and is not to consider, for example, "the contents, actual or hypothetical, of a counterclaim." *Id.* Well, this is not a case where an individual has attempted to avoid his or her arbitration agreement by proceeding directly to state court or federal court under federal employment discrimination laws; instead, it is a case where the individual, Mr. Whitcomb, has proceeded with arbitration, and is apparently content to proceed under the arbitration agreement that the Forum itself says it is willing to enforce. The underlying dispute then, by the plain face of the Petition, involves Plaintiffs' disagreement with the way the Forum intended to proceed. If anything, whether Mr. Whitcomb files a lawsuit, without going through arbitration, is hypothetical at best, and cannot be the underlying basis for this Court's limited jurisdiction.

2. In any event, even if the Court could rely on Mr. Whitcomb's hypothetical suit under federal employment laws to satisfy that part of Section 4 of the Act, the justicability of Plaintiffs' petition itself is equally problematic. Section 4 of the Act does not just require an underlying

dispute for which this Court would have jurisdiction under Title 28; it also requires, first and foremost, a party aggrieved by another's failure to arbitrate.

This critical requirement is met, according to the Third Circuit, when a party "takes an unequivocal position that it will not arbitrate." *See PaineWebber, Inc. v. Faragalli,* 61 F.3d 1063, 1067 (3d Cir.1995). Indeed, although it appears that courts within the Eleventh Circuit have not squarely addressed this issue, other circuits have agreed that absent a refusal to arbitrate, "arbitration cannot be compelled under Section 4." *See, e.g., Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 725 F.2d 192, 195 (2d Cir.1984). As a result, where the Section 4 requirement of a refusal to arbitrate has not been met, the court lacks subject matter jurisdiction over the petition to compel arbitration. *See Hartford Accident & Indem. Co. v. Equitas Reinsurance Ltd*., 200 F.Supp.2d 102, 110 (D.Conn.2002) (granting motion to dismiss for lack of subject matter jurisdiction where it was not sufficiently alleged that the parties refused to arbitrate).

Here, although Plaintiffs contend that Defendant "continues to refuse to arbitrate," the record indicates otherwise. Indeed, as stated, it was the Defendant, Mr. Whitcomb, who filed a claim seeking arbitration before the National Arbitration Forum. (Doc. 19-1, p. 2). There is no indication whatsoever that Defendant has failed to arbitrate. Rather, it is the National Arbitration Forum that has determined it is unable to administer the 2010 agreement – the agreement Plaintiffs seek to have followed. (Doc. 19-2, p. 4). The National Arbitration Forum stands ready to administer the 2009 arbitration agreement, and Defendant stands ready to arbitrate. (Doc. 19-2, p 4.) The parties' dispute could proceed promptly to arbitration before the National Arbitration Forum under the 2009 agreement if not for Plaintiffs' refusal to proceed under that agreement, apparently due to the requirement that Plaintiffs must advance the costs of arbitration

fees which total $5,000.00.  (Doc. 19-2, p. 5).

Consequently, I submit that Plaintiffs have failed to establish the requirement of § 4 that a party seeking to compel arbitration be "aggrieved" by the refusal of the adverse party to arbitrate before the aggrieved party may seek an order from the court compelling arbitration.  If the adverse party has not refused to arbitrate, or will agree to arbitrate, there is no reason for court involvement in the first place.  "[I]t is doubtful that a petition to compel filed before the 'adverse' party has refused arbitration would present an Article III court with a justiciable case or controversy in the first instance." *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1067 (3d Cir. 1995).

Courts decline to compel arbitration, as I recommend this Court should do, absent a showing that one or more of the arbitration parties have failed, neglected, or refused to arbitrate. *See Hartford Accident & Indem. Co. v. Equitas Reinsurance Ltd*., 200 F.Supp.2d 102, 104 (D.Conn.2002); *Diemaco, a Div. of Devtek Corp. v. Colt's Mfg. Co., Inc*., 11 F.Supp.2d 228 (D.Conn. 1998) (declining to compel arbitration where defendant did not "refuse" to arbitrate, rather the parties disagreed regarding the selection process of the selected arbitrators).  Here, it appears that Defendant pursued his arbitration claim before the National Arbitration Forum.  It is the National Arbitration Forum that has stated it is unable to administer the provisions of the 2010 agreement, not Defendant's refusal to arbitrate, that has been the stumbling block.

As was the case in a sister court (*see Diemaco, a Div. of Devtek Corp. v. Colt's Mfg. Co., Inc*., 11 F.Supp.2d 228 (D.Conn. 1998)), this case is more about the Plaintiffs efforts' to compel arbitration on their preferred terms (and, presumably, to avoid the fees associated with the 2009 agreement), as opposed to Mr. Whitcomb's refusal to arbitrate.  And, absent a refusal to arbitrate, Section 4 of the Act, which is necessary for this Court's jurisdiction, is not satisfied.

## III.  CONCLUSION

For the reasons explained above, it is **RESPECTFULLY RECOMMENDED** that Plaintiffs' Petition for an Order Compelling Arbitration (Doc. 1) be **DENIED**.

**DONE** and **ORDERED** in Ocala, Florida on February 9, 2014.

*[Signature]*
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties